UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| CTA ACOUSTICS, INC., | ) | |
|---|---|---|
| Plaintiff, | ) | Civil Action No. 11-200-ART |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| AT&T CORP., et al., | ) | **ORDER** |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Apparently, the old saying "You get what you pay for" does not always apply. In this case, the plaintiff, CTA Acoustics, Inc., alleges that the defendants, AT&T Corp., AT&T Communications of the South Central States, LLC, and TCG America, Inc., continued to charge CTA for a communication line that had been disconnected and destroyed for almost ten years. The lone diverse defendant, AT&T Corp., removed this case to federal court on the theory that CTA fraudulently joined the other defendants. Because AT&T Corp. has not met the stringent requirements for establishing fraudulent joinder, CTA's motion to remand is granted.

**BACKGROUND**

In 1993, CTA contracted with AT&T Corp. for a T-1 line between facilities in Corbin, Kentucky, and Troy, Michigan. R. 5-1 at 4. The T-1 line provided facility-to-facility, high-speed data and voice communication capability. *Id*. CTA alleges that, under the contract, AT&T Corp. installed hardware and equipment in both offices, and AT&T South Central and TCG provided the T-1 line services. *Id*. In 1999, CTA and AT&T Corp.

contracted for two additional T-1 lines. R. 1-3. These were not facility-to-facility lines. Instead, each location received a separate T-1 line connected directly to an Internet server. R. 5-1 at 5. Thus, each facility could utilize the Internet for high-speed communication rather than relying on a direct T-1 line. CTA still kept the facility-to-facility T-1 line as a backup. *Id*.

In 2001, CTA moved the Troy facility to Madison Heights, Michigan. *Id*. at 6. CTA notified AT&T Corp. that it would no longer need the T-1 lines for the Troy facility and contracted for T-1 line service in Madison Heights. *Id*. Rather than install a facility-to-facility T-1 line, CTA contracted only for a T-1 line to an Internet server and exclusively relied on the Internet for high-speed communications between facilities. *Id*. In February 2002, AT&T Corp. sent CTA a bill that included charges for disconnecting and adding T-1 lines. *Id*.

One year later, an explosion destroyed CTA's facility in Corbin, Kentucky. *Id*. at 7. By November 2003, CTA moved to another location in Corbin and contracted with AT&T Corp. for a T-1 line to the new facility's Internet server. *Id*.

Around February 2011, CTA discovered that AT&T Corp. never stopped billing for the original facility-to-facility T-1 line, despite CTA's move from Troy in 2002 and the Corbin facility's destruction in 2003. *Id*. In March 2011, CTA notified AT&T Corp. about the erroneous billing and sought reimbursement for an estimated overpayment of approximately $602,525. R. 1-1 at 19. After CTA sent two more letters, *id*. at 24, 26, AT&T Corp. responded with a brief message: CTA was past due in the amount of $16,286, and AT&T Corp. would disconnect all T-1 services if CTA did not pay. *Id*. at 28. Rather than

risk complete service termination, CTA complied, but contested the payment and past overbilling. R. 1-1 at 34.

In June, CTA sued AT&T Corp., AT&T South Central, and TCG in Laurel Circuit Court for breach of contract, unjust enrichment, and coercion. R. 1-1 at 7. In July 2011, AT&T filed a notice of removal invoking this Court's diversity jurisdiction. R. 1. Because AT&T South Central and TCG, like CTA, are citizens of Delaware, complete diversity is lacking on the face of the complaint. Still, AT&T argues that federal jurisdiction is appropriate because CTA fraudulently joined the other defendants, and thus the Court may ignore their non-diverse citizenship.

## DISCUSSION

To establish fraudulent joinder, AT&T Corp. must demonstrate that "there is [no] colorable basis for predicting that" CTA will be able to recover against AT&T South Central and TCG. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). The burden of proving fraudulent joinder is a heavy one, and it belongs to AT&T Corp. alone. *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999). AT&T Corp. has not carried that burden here.

CTA's complaint states that both AT&T South Central and TCG are liable for breach of contract because both were parties to the contract "for the provision of T-1 line services" between Corbin, Kentucky, and Troy, Michigan. R. 1-1 at 9, 15. According to CTA, AT&T South Central and TCG continued to "bill[] and collect[] payments from CTA" after CTA requested that services cease (and after one facility was destroyed in an explosion). *Id*. These allegations state, at a minimum, a breach of contract claim against AT&T South

Central and TCG. *See Kentucky Util. Co. v. South East Coal Co.*, 836 S.W.2d 392, 403 (Ky. 1992).

AT&T Corp. argues that breach of contract claims against AT&T South Central and TCG are not colorable because they never contracted with CTA, R. 8 at 2, and general references to subsidiaries and affiliates of AT&T Corp. in an agreement does not transform unnamed service providers into contractual parties, *id*. at 3. It is true that CTA would have a harder row to hoe if it alleged that AT&T South Central is liable simply because it is a subsidiary of AT&T Corp. *See Dare To Be Great, Inc. v. Commonwealth ex rel. Hancock*, 511 S.W.2d 224, 227 (Ky. 1974) (holding that parent and subsidiary liability determinations for breach of contract are independent because they are separate legal entities). And CTA's claims would be even more difficult if it alleged AT&T South Central and TCG are liable only because they provided the services described in a contract exclusively between AT&T Corp. and CTA. *Derby Road Building Co. v. Commonwealth, Dep't of Highways*, 317 S.W.2d 891, 895 (Ky. 1958) ("Ordinarily only those who are parties are liable for the breach of a contract, and the parties cannot impose any liability upon a stranger to the contract under its terms."), *overruled on other grounds by Foley Constr. Co. v. Ward*, 375 S.W.2d 392 (Ky. 1963). But none of the above apply here. CTA alleges that AT&T South Central and TCG were named parties in the 1993 agreement for T-1 services. R. 5-1 at 13. As parties, both AT&T South Central and TCG are in privity with CTA and can be liable for breaches of the agreement. *Derby Road*, 317 S.W.2d at 895.

Undeterred, AT&T Corp. claims there is insufficient proof that AT&T South Central and TCG are parties to the 1993 agreement because CTA has not provided a copy of the

contract. R. 8 at 2–3. But AT&T Corp. misunderstands its burden of proof. AT&T Corp. is the party invoking federal jurisdiction, meaning AT&T Corp., not CTA, carries the burden to demonstrate fraudulent joinder. *Jerome-Duncan, Inc.*, 176 F.3d at 907. AT&T Corp. asserts that, if a 1993 agreement exists, it would be similar to the 1999 agreement, which does not include AT&T South Central or TCG as parties. R. 8 at 2. But this allegation on its own is not enough. Though CTA will ultimately have the burden to demonstrate that an agreement exists, *see Haney v. Yates*, 40 S.W.3d 352, 355 (Ky. 2000), in a motion to remand, the Court must "resolve all disputed questions of fact" in CTA's favor. *Coyne*, 183 F.3d at 493. Further, it does seem that *some* agreement exists for the facility-to-facility T-1 line. Why else would AT&T Corp. believe it can continue to demand payment and even threaten to disconnect other services?

Finally, AT&T Corp. asserts that the 1999 agreement, which *is* in the record, is controlling and that this agreement plainly does not include AT&T South Central and TCG as parties. R. 8 at 2-3. The Court does not need to determine whether the 1999 agreement includes AT&T South Central and TCG as parties because there is no indication that the 1999 agreement subsumes the 1993 agreement. In other words, the terms of the agreement do not demonstrate an intent to create a master agreement for all T-1 lines. The 1999 agreement contains a merger clause stating "this agreement supersedes all prior agreements," R. 1-3 at 4 ¶ 12.8, but this only refers to "the services to be provided hereunder." *Id*. A review of the services description section indicates that the scope of the merger clause is narrow because "services to be provided hereunder" are limited to new services purchased. *Id.* at 6–8. For example, the terms refer to network services "which Customer now orders or

subsequently orders," *id*. at 6, and indicates that "[b]illing will begin on the later of" the date of actual or scheduled network activation, *id*. at 6 ¶ 3B. Additionally, the 1999 agreement contemplates other services governed by other contracts. It directs that "[p]roducts or services sold or provided under another contract . . . are governed solely by the terms of that contract." *Id*. at 7 ¶ 6A. Further, what the agreement does not say is also important. It makes no reference to previously installed T-1 lines and it does not mention facility-to-facility communication lines. Therefore, the 1999 agreement indicates that each T-1 line is controlled by a separate agreement.

On the face of its complaint, CTA has alleged a plausible claim against AT&T South Central and TCG. AT&T Corp. has fallen short of destroying the factual basis of CTA's claims.

## CONCLUSION

Accordingly, it is **ORDERED** that CTA's motion to remand, R. 5, is **GRANTED**. This case is **REMANDED** to the Laurel Circuit Court and **STRICKEN** from the Court's active docket. All other pending motions are **DENIED** as moot.

This the 18th day of October, 2011.

Signed By:
*Amul R. Thapar*
United States District Judge